## Case No. 2,728.

### In re CIRCUIT COURT.

### [1 Dill. 1.]¹

#### Circuit Court, D. Missouri. 1870.

CIRCUIT COURTS—SCHEME OF ORGANIZATION—DISTRICTS OF MISSOURI.

1. The organization of the circuit court for the districts of Missouri is peculiar, and is provided for by the act of March 3, 1857 (11 Stat. 197).

2. By this act it was provided that Missouri should be divided into two districts, with but one circuit court for both, and that the two judges of the district court should sit in the circuit court: Held, that the act of April 10, 1869 (16 Stat. 44), creating the office and providing for the appointment of circuit judges, and declaring who should hold the circuit courts, did not exclude either of the district judges from the right still to sit in the circuit court.

3. The scheme of the organization of the national courts by the judiciary act and the purpose of congress in creating the new circuit judgeships, commented on by the circuit judge.

Before DILLON, Circuit Judge, and TREAT and KREKEL, District Judges.

DILLON, Circuit Judge. Respecting the constitution of this court, an important question has been started, which it is necessary to determine at the outset of this, the first regular term which has been held since the taking effect of the act of April 10, 1869, entitled "An act to amend the judicial system of the United States" (16 Stat. 44), and which modified the scheme of the national judicial tribunals, by providing for the appointment, in each circuit, of a judge called and commissioned as the "circuit judge." That question is: What judges have the legal right to sit in this court? Or more specifically stated, have both the dis-

¹ [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

trict judges, or has either of them, this right?

The answer to this inquiry depends on the effect of the above-mentioned act of 1869, upon the prior act of congress of March 3, 1857, dividing the state of Missouri into two judicial districts and making special provisions, of an unusual character, as to the constitution of the United States circuit court therein. 11 Stat. 197.

Prior to the year 1857 the national courts in Missouri were organized on the usual plan, that is, the state constituted one district, having a district court, and a circuit court for the district, held by the supreme justice, sitting with the district judge, or by either, in the absence of the other; but in that year the act of March 3d, before referred to, was passed. By it the state was divided into two districts, the eastern and western, each district to have a judge and a district court of its own, the court for the eastern district to be held at St. Louis, and that for the western district at Jefferson City. Before this division of the state, the circuit court had always been holden in the city of St. Louis.

Respecting the circuit court, the 10th section of the act of 1857 made the following peculiar provisions which it is necessary to notice with particularity. This section is in these words: "The circuit court of the United States in and for the present district of Missouri shall be held at the same times (the first Mondays of April and October in each year) and place (St. Louis) as heretofore; shall retain jurisdiction of all matters now pending therein, and shall have and exercise the same original jurisdiction in said state as is vested in the several circuit courts of the United States, as organized under existing laws: and shall also have and exercise the same appellate jurisdiction over the district courts of the United States for said eastern and western districts of Missouri, as by existing laws is vested in the several circuit courts of the United States over the district courts of the United States, in their respective circuits. The said circuit court shall be called the circuit court in and for the districts of Missouri, and shall be composed of the justice of the supreme court assigned to said circuit, and the two judges of the eastern and western districts of Missouri; but may be held by one or more of said three judges in the absence of the remainder." Then follows a provision that in the circuit court the district judge shall not sit in appeals from his own district, and certain regulations respecting a division of opinion, &c., not essential to be now specially noticed.

It will be seen that instead of the usual mode of providing a circuit court for each district, only one such court was established for both, but it was provided that each of the district judges should sit therein, and the court should continue to be held in this city. If the act of 1869 does not repeal or modify the act of 1857, it is clear that the two judges of the United States district courts may continue, as heretofore, to sit in this court as members of it. It is to be observed that the act of 1869 makes no express repeal of the act of 1857. If there is any repeal it is by implication: therefore, on plain, familiar, and acknowledged principles of construction, both acts are to stand and both are to be considered in force except so far as the latter act is necessarily inconsistent with the former one.

It is now proper to notice the act of 1869. Section 2 enacts as follows: "For each of the existing nine judicial circuits there shall be appointed a circuit judge, who shall reside in his circuit and possess the same power and jurisdiction therein as the justice of the supreme court allotted to the circuit. The circuit courts in each circuit shall be held by the justice of the supreme court allotted to the circuit, or by the circuit judge of the circuit, or by the district judge of the district sitting alone, or by the justice of the supreme court and circuit judge sitting together, in which case the justice of the supreme court shall preside, or in the absence of either of them, by the other (who shall preside), and the district judge."

How far, then, are the provisions of the two acts in conflict? Not as to the supreme justice, for by both his right to sit in the court is expressly given. By the prior act no such officer as the "circuit judge" was given the right to sit, but this right is conferred by the act of 1869 [16 Stat. 44]. This necessarily changed, to this extent, the provisions of the act of 1857 as to the constitution of the circuit court, but this change did not operate to displace those who had previously the right to sit there, but simply to confer this right upon the newly created circuit judge.

By the act of 1857 [11 Stat. 197], it was enacted that the two district judges should be members of the court, and that any one of the three judges might hold it in the absence of the others. And so by the act of 1869 "the district judge of the district" may hold the circuit court alone if the other judges are absent.

Manifestly, then, it was not the intention of congress that there should, in any case, be a circuit court in which no district judge should be entitled to sit, for it is expressly provided that the district judge may sit alone or in connection with the supreme justice or the circuit judge. No construction is admissible which would exclude both of the district judges from seats in the court, for the plain reason that such a result would frustrate the clearly declared legislative will. To my mind it is plain that if both the judges of the eastern and western districts of this state may not sit in this court, neither can.

There is no act of congress providing a

CIRCUIT (Case No. 2,728)

distinct circuit court for each of the two districts. The statute of 1857 enacts that the "court shall be called the circuit court for the districts of Missouri." This act is not repealed. It is still the constituent statute of this court. It is by virtue of it that the court is authorized to sit here at all.

What superior right has the judge of the eastern district to that of the judge of the western district to be regarded as a member of the court? Surely the circumstance that the law directs this court to be holden alone at a place in the eastern district, is not material, since it does not make it alone the court for that district, and hence, as it would seem, does not give to the judge of that district any more right to sit here than is given to the judge of the western district. The same construction which would exclude Judge Krekel would exclude Judge Treat, and the exclusion of both would be a result so plainly in conflict with the scheme of the organization of the circuit court, with the language of the act of 1869 not less than that of 1857, that the view which leads to it or involves it, cannot be sound.

This court owes its existence to the act of 1857 which gave it its constitution. In passing it congress was adopting special provisions to meet the wants of this state. The act of 1869 had no reference to the special case of Missouri. It did not abolish the circuit court for Missouri, nor change the law by which that court was created and organized, except in the particulars wherein the two acts are repugnant. It conferred powers and jurisdiction upon the judges it created, but did not destroy or interfere with the rights, powers, or jurisdiction of the district judges, to sit with the justice of the supreme court, or with the newly created circuit judge. This conclusion finds support in other considerations to which I may briefly advert.

The "Judiciary Act" [1 Stat. 73], so styled by way of eminence, passed during the same year in which the constitution itself went into operation, and which organized the national courts, provided both for the district and the circuit courts. The states were erected into districts, and the districts arranged into circuits. By that act the district judge sat in the circuit court, and except for a brief period under the act of 1801, repealed in 1802, the district judges have ever been entitled to sit in the circuit court. Through the district judge, the circuit court had a connection with the district court, and through the supreme justice with the supreme court. The plan though complex, was nicely adjusted, and its different parts skillfully fitted together and made into a symmetrical and harmonious system. The scheme of juridical organization and jurisdiction provided by judiciary act, has, from that time to this, been the object of the unqualified admiration of statesmen, lawyers, and judges, so much so, indeed, that congress has hesitated to touch or amend it even when it seemed clearly defective or inadequate.

If the act of 1869, which it is suggested has wrought so great a change as to deprive one or both of the district judges from sitting in, or holding, this court, is carefully examined, it will be seen how cautious congress was, in attaining the end designed, to innovate as little as possible upon the long established and approved judicial system. The care and deliberation which it evinces, as well as the plain, direct and perspicuous language in which its provisions are expressed, make it a fitting supplement to the famous act which it amends.

By the judiciary act the circuit court was peculiarly constituted. It was a distinct tribunal, with a separate, clearly defined, and most important jurisdiction, original and appellate, embracing causes criminal and civil, at law, in equity, and in admiralty. Though it was a court thus distinct and thus important, it had no judge of its own. It was held by the justice of the supreme court and by the district judge, each of whose duties was mainly in another tribunal, and neither of whom was commissioned as a circuit judge. In 1789, and for years thereafter, the judicial force thus provided was adequate to the wants of the country; but long prior to 1869 it had ceased to be so. The business of the supreme court had increased and accumulated so as to demand quite all the available time of the judges of that court. It had become simply impossible for them to do all their circuit and all their appellate work. Additional judicial force was absolutely necessary, and congress was called upon to supply it. To provide this, was the object of the act of April 10, 1869. To provide it without radical and unnecessary changes in a system of judicial organization which long experience had sanctioned and approved, was the obvious dictate of wisdom and sound policy. Thus viewing the matter, congress, in passing the act of 1869, in substance, said: We have courts enough, but not judges enough to do the work; there is no need to recast the courts; the district courts in general are not over-worked, and when they are the remedy is easy; the circuit court has no separate judges of its own; we will create them, thus at once relieving the labors of the supreme justices, and furnishing additional force in the circuits, but we will otherwise maintain the existing constitution of the circuit courts by still requiring, in the manner specified, both the supreme justices and the district judges to sit in and hold the same.

Such was the purpose of the legislation of 1869. The general language of the act should be viewed in the light of the objects sought to be effected, and construed accordingly. Thus viewed and thus construed, it cannot have the effect to annul special provisions in other acts passed to meet special

wants, when thus to hold would be to declare that congress, with respect to the circuit court for this state, had departed from a line of policy almost coeval with the existence of the government, and which has been sanctioned by the approving judgment of nearly three generations of lawyers, judges, and statesmen. 3 Webst. Works, 150 et seq. The argument might be extended and the reasons multiplied, but it is not necessary. I am of the opinion, in which the district judges concur, that the latter are both members of this court, with the powers, jurisdiction, and duties conferred and enjoined by the act of 1857, except so far only as the same are necessarily modified by the act creating the circuit judges.

It may be added that by the statute of 1869 the district judge does not, in any case, sit in the circuit court when the supreme justices and circuit judges are both present. In this respect that act necessarily modifies the prior act of 1857, and to this extent innovates upon the judicial system established by the judiciary act. But this is a conjunction not likely often to occur, and the change in this respect is more nominal than real; and congress was induced, doubtless, to give its sanction to it, perhaps partly to keep the circuit court from being too large to allow divisions of opinion to be certified, and perhaps to economize the judicial force, and not unnecessarily to take the district judges from their own courts.

The result is that both or either of the district judges of this state may sit as heretofore with either the supreme justice or the circuit judge, and in their absence, both or either of the district judges may, as before, sit in or hold the circuit court.

NOTE. Confirmatory of the correctness of the foregoing view, see the act of July 1, 1870 (16 Stat. 179), passed since the above opinion was delivered.